# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANDY CRAWFORD, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:18-cv-01883-JHE |
| WARREN MANUFACTURING, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Defendant Warren Manufacturing, Inc. ("Warren" or "Defendant") has moved to compel arbitration and either dismiss or stay this action. (Doc. 18). Plaintiff Andy Crawford, Jr. ("Crawford" or "Plaintiff") has not opposed that motion. Warren has filed two replies in support. (Docs. 25 & 30). For the reasons stated below, Warren's motion is **GRANTED**.

### I. Factual and Procedural Background

Proceeding *pro se*, Crawford file this Title VII employment action on November 14, 2018, along with a motion for leave to proceed *in forma pauperis* ("IFP") and to appoint counsel. (Docs. 1 & 2). The undersigned granted the IFP motion, but required Crawford to file an amended complaint, as it was unclear whether he was attempting to assert Title VII claims against three individual defendants.[2] (Doc. 3). The undersigned also denied the motion to appoint counsel without prejudice. (*Id.*).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 28).

[2] When a plaintiff is granted IFP status, a court is required to review the complaint and dismiss it *sua sponte* if it is "frivolous or malicious," "fails to state a claim on which relief may be

During the next two months, Crawford filed several amended complaints (omitting the individual defendants), (docs. 6, 8 & 10), none of which were suitable for service because they failed to comply with the Federal Rules of Civil Procedure, (*see* docs. 7 & 11). In the last of these, Crawford again requested counsel. (Doc. 10). Since Crawford's EEOC charge (attached to his original complaint) contained potentially meritorious claims, the undersigned granted that request and appointed counsel for the limited purpose of helping Crawford draft a complaint suitable for service. (Doc. 11). On April 4, 2019, attorney Jason P. Bailey ("Bailey") filed a limited notice of appearance on behalf of Crawford. (Doc. 12). With Bailey's assistance, Crawford submitted his third amended complaint, (doc. 14), the operative pleading in this case.

In the third amended complaint, Crawford, who is black,[3] alleges he formerly worked for Warren as a welder helper. (*Id.* at ¶ 17). While employed there, Crawford worked in close proximity to two employees who leveled racial slurs at him and made sexually suggestive comments and actions towards him. (*Id.* at ¶¶ 17-23). Another coworker occasionally joined in. (*Id.* at ¶¶ 18, 24). When Crawford complained about this to supervisors, he was told by the main supervisor to go home if he could not work with them. (*Id.* at ¶¶ 25-29). Although he returned to work after complaining, he was sent home during this shift and fired the next day. (*Id.* at ¶¶ 30-31). Crawford alleges a count of Title VII race discrimination, a count of Title VII sex discrimination, and a count of Title VII retaliation. (*Id.* at ¶¶ 32-60).

---

granted," or "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B).
  [3] Crawford's race does not actually appear in the third amended complaint, but his EEOC charge, referenced in the complaint, (doc. 14 at ¶ 15), includes it. (*See* doc. 1 at 10).

Finding the complaint suitable for service, the undersigned ordered the Clerk of Court to serve the complaint on Warren. (Doc. 15). On June 21, 2019, Warren filed the instant motion to compel arbitration. (Doc. 18). The undersigned granted Bailey's pending motion to withdraw as counsel from his limited appearance, (docs. 17 & 20), and set a briefing schedule on the motion to compel arbitration, requiring Crawford's response by July 8, 2019, (doc. 21). That order included the following language:

> Plaintiff should note that Attorney Jason P. Bailey was appointed by the court solely to assist Plaintiff in drafting a complaint. (See doc. 11). Attorney Bailey has since been permitted by text order to withdraw as counsel for Plaintiff, (see doc. 20); the court will forward Plaintiff a copy of the docket sheet, which contains that text order. Plaintiff should be aware that he, and not Attorney Bailey, is responsible for responding to the motion to compel arbitration.

(*Id.* at n.1). Crawford did not timely file a response to the motion to compel arbitration, and on July 12, 2019, Warren filed a reply in support of its motion urging it be granted as unopposed. (Doc. 25).

On July 22, 2019, the undersigned held a telephone conference with the parties to discuss the process of making an election as to magistrate judge jurisdiction. (*See* doc. 23). At that conference, Crawford indicated his address had changed since he filed the complaint. The undersigned again reminded Crawford that he alone was responsible for responding to Warren's motion. The same day, the undersigned entered an order allowing Crawford additional time—until August 3, 2019—to respond to the motion, which was mailed to Crawford's new address. (Doc. 26). The order stressed that "**it is Plaintiff's responsibility to respond to motions filed by Defendant**, whether or not he is represented by an attorney." (*Id.*) (emphasis in original). The order further noted "**[i]f Plaintiff does not submit a response by that deadline, the motion to compel arbitration may be treated as unopposed**." (*Id.*) (emphasis in original). Crawford did

3

not respond by the deadline. On August 9, 2019, Warren filed a second reply requesting its motion be granted as unopposed. (Doc. 30).

## II. Analysis

Crawford has had several opportunities to respond to the motion to compel arbitration, but he has neither filed a response nor requested additional time to response. Consistent with the previous order, (doc. 26), the undersigned treats the motion to compel arbitration as unopposed. Nevertheless, the undersigned must still determine if Warren is entitled to the relief it seeks.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., (the "FAA"), evinces "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). Under the FAA, a court confronted with an enforceable arbitration agreement must stay the case and refer the matter to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration

9 U.S.C. § 3. The stay is mandatory, precluding the exercise of discretion by a district court. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985); *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq*., a district court *must* grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.") (emphasis added).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Thus, the Court looks to Alabama law to determine whether an enforceable arbitration agreement exists. Under Alabama law, there are two requirements for a valid arbitration contract: "(1) there must be a written agreement calling for arbitration and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce." *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997).

Here, Warren has provided the declaration of Russell Warren, Warren's CEO, attesting to the authenticity of an employee agreement Crawford executed on September 2017, which is attached as an exhibit to that declaration. (Docs. 18-1 and 18-2). That agreement provides, in relevant part:

> PRE-DISPUTE AGREEMENT TO ABIDE BY EMPLOYEE DISPUTE PROGRAM AS AN ALTERNATIVE TO LITIGATION
>
> I have received and read carefully the company open door policy, verbal complaint policy, written complaint policy, mediation policy, and arbitration policy. In consideration for and as a material condition of my employment and the continuation of my employment with Warren Manufacturing, I agree
>
> A. To abide by the terms of the Employee Dispute Program.[4]
>
> […]
>
> C. Binding arbitration pursuant to the Employee Dispute Program is the final remedy for resolution or claims by me against the company, supervisor, co-workers, or others arising out of my employment.
>
> […]

---

[4] Warren has also attached a copy of the Employee Dispute Program. (Doc. 18-3).

BY SIGNING THIS AGREEMENT, I AM AGREEING THAT ALL UNRESOLVED DISPUTES WILL BE DECIDED BY ARBITRATION, AND I AM GIVING UP MY RIGHT TO A JURY TRIAL OR COURT TRIAL.

(Doc. 18-2 at 2). Crawford's signature, dated September 21, 2017 (Crawford's hire date, (*see* doc. 14 at ¶ 7), appears below this last portion.[5] (Doc. 18-2 at 12).

This is a "written agreement calling for arbitration" within the meaning of Alabama law. *See Prudential Securities*, 689 So. 2d at 832. Additionally, the complaint indicates Warren is "a domestic entity engaged in commerce in Alabama and other states. In particular it manufactures bulk feed equipment which it sells or which are used nationwide. Distributors for [Warren's] products can be found in several states from Minnesota to California. [Warren] is engaged in interstate commerce." (Doc. 14 at ¶ 10). Warren agrees with this characterization, (doc. 18 at 3), and Russell Warren's affidavit also supports it, (doc. 18-1 at ¶ 5). *See also Musnick v. King Motor Co. of Fort Lauderdale*, 325 F. 3d 1255, 1258 n.2 (11th Cir. 2003) ("the FAA applies to all arbitration agreements involving interstate commerce, including employment contracts"). Thus, both requirements for a valid arbitration agreement under Alabama law are met.

Crawford's Title VII claims—which are "against the company . . . [and] arising out of [his] employment," (doc. 18-2 at 2), and concern events that postdate his signature on the agreement, (*see* doc. 14)—are within the scope of the agreement. To the extent there are any doubts, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . [d]oubts should be resolved in favor of

---

[5] For its part, a Warren signatory executed the agreement on September 25, 2017. (Doc. 18-2 at 2).

coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). Accordingly, Crawford's claims must be resolved in arbitration.

## III. Conclusion

For the reasons stated above, Warren's motion to compel arbitration, (doc. 18), is **GRANTED**. A separate order dismissing this action will be entered.

DONE this 13th day of August, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE